UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ELLEN ANDREWS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:20 CV 1583 RWS |
| ) | |
| R.J. REYNOLDS TOBACCO CO., ) | |
| et al., ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This case is before me on Defendant R.J. Reynolds Tobacco Co.'s, motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or in the alternative a more definite statement under Fed. R. Civ. P. 12(e). ECF No. [10]. Plaintiff Ellen Andrews brings claims for strict products liability, fraud, and negligence. ECF No. [1-1]. For the reasons set forth below, I will grant in part and deny in part the Defendant's motion.

## BACKGROUND

Plaintiff initially filed a Petition in the 21st Judicial Circuit Court of the County of St. Louis, Missouri on September 13, 2020, alleging that she developed chronic obstructive pulmonary disease and lung cancer as the result of smoking cigarettes manufactured by Defendant R.J. Reynolds and sold by Defendant Schnuck Markets. Plaintiff brought claims for strict products liability, negligent

1

design, fraudulent concealment, and concealment fraud conspiracy against Defendant R.J. Reynolds. Plaintiff brought a single claim for strict products liability against Defendant Schnuck Markets.

Defendant R.J. Reynolds removed the case to the federal court on November 6, 2020, invoking the Courts diversity jurisdiction under 28 U.S.C. § 1332. Although Schnuck Markets is a resident of Missouri, R.J. Reynolds argued that complete diversity still existed because Schnuck Markets was fraudulently joined. I denied the Plaintiff's motion to remand and dismissed Schnucks as a defendant on December 18, 2020. Plaintiff then notified the Court that a motion to consolidate was filed in the related case, Eugene Ford v. R.J. Reynolds Tobacco Co., Case No. 4:20-cv-1551-HEA.  The motion was denied on  June 28, 2021.  Therefore, Reynold's motion to dismiss, which was filed prior to the motion to remand, is now ready for consideration.

## STATEMENT OF FACTS

Andrews began smoking in the early 1970's at the age of fifteen. Initially she only smoked intermittently, limited by her ability to sneak Viceroy cigarettes from her mother.  This continued for approximately two years. Then she switched to Newport Menthol cigarettes and quickly became a regular smoker. Andrews continued to smoke and has been a regular smoker for more than 30 years, smoking Viceroy, Newport, and Kool cigarettes. These cigarettes contained

flue-cured tobacco, menthol, and nicotine, which all contributed to their dangerous and addictive nature.

Throughout her thirty-plus years of smoking, Andrews has seen and heard public statements made by the cigarette industry, including RJR Lorillard, Brown and Williamson, and the Tobacco Institute, denying that smoking causes cancer and other rare diseases. They made these statements despite the fact that cigarettes contain potentially dangerous ingredients.  Additionally, throughout her years of smoking, Andrews saw advertisements that promoted cigarettes as cool and used misleading euphemisms. Andrews does not claim that the cigarettes she purchased did not contain the federally mandated warning, but rather alleges that the public statements and advertisements made by the cigarette industry caused confusion and ultimately lead her to believe that cigarettes were not yet proven to cause cancer or other serious illnesses.

## LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. When considering a Rule 12(b)(6) motion, I must assume the factual allegations of the complaint to be true and construe them in favor of the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326–27, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). I am not, however, bound to accept as true a legal conclusion couched as a factual

allegation. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570). Although "specific facts are not necessary," the plaintiff must allege facts sufficient to "give fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's obligation to provide the "grounds" of her "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562. This standard "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556. The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of [her] claim." Twombly, 550 U.S. at 556.

4

# DISCUSSION

The Defendant argues that Plaintiff's claims should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). First Defendant argues that Plaintiff's design defect claims are impliedly preempted or in the alternative fail to state a claim because they do not identify a specific design defect, but rather rely on the fact that all cigarettes are harmful. Second, Defendant argues that Plaintiff's fraud claims must be dismissed because they are merely refashioned failure to warn claims which are preempted by the Federal Cigarette Labelling and Advertising Act.

COUNTS I AND II (DESIGN DEFECT AND NEGLIGENT DESIGN)

*Preemption*

In Count I and II, Plaintiff alleges that the cigarettes designed and manufactured by the defendants and their predecessors in interest were in an unreasonably dangerous and defective condition to users. Plaintiff specifically alleges that the use of flue-cured tobacco and manipulation of the amount of nicotine in the cigarettes were design choices that rendered the cigarettes unreasonably dangerous. Defendant, relying on Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000), argues that these claims are preempted because the United States Supreme Court has recognized that cigarettes are a legal product and a "ban on tobacco

5

products would plainly contradict congressional policy." Brown & Williamson, 529 U.S. at 139. Plaintiff challenges Defendant's characterization of her claim, arguing that her claim attacks specific design choices rather than cigarettes more generally and therefore would not result in a functional ban of cigarettes as contemplated in Brown & Williamson.  Plaintiff also argues that regardless of the characterization of the claims, they are not preempted.  She relies in part on Graham v. R.J. Reynolds Tobacco Co., 857 F.3d 1169, 1190 (11th Cir. 2017), which emphasized that Brown & Williamson did not address the states' power to regulate tobacco or preemption.

Plaintiff's design defect claims are not preempted. The issue in Brown & Williamson, was whether the Food and Drug Administration had authority under the Food, Drug, and Cosmetic Act, to regulate tobacco products. Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000). The Supreme Court analyzed the history of tobacco legislation and the implications of FDA regulation and concluded that regulation by the FDA would require it to ban the sale of tobacco, which would contradict congressional intent to allow their sale but inform consumers of the risk. Brown & Williamson, 529 U.S. at 137. The Court did not address whether states could ban tobacco and did not consider the issue of state sovereignty.  Since Brown & Williamson was decided in 2000, some courts have determined that design defect

claims that would result in functional bans on tobacco products are preempted based on the Supreme Court's interpretation of congressional intent in Brown & Williamson. But others have not. In 2009, the Ninth Circuit indicated in dicta that such preemption is unwarranted. The Ninth Circuit stated in Hunter v. Phillip Morris USA that the plaintiff's product liability claim did not "present an obstacle to the congressional policy concerning the regulation of tobacco." Hunter v. Philip Morris USA, 582 F.3d 1039, 1048 (9th Cir. 2009). The Ninth Circuit noted that since the Supreme Court issued its decision in Brown & Williamson, Congress had repealed the provision of the Agricultural Adjustment Act of 1938 that had articulated a federal policy in support of the sale of tobacco. Id. In 2017, the Eleventh Circuit, in an en banc decision, "conclude[d] that federal tobacco laws do not preempt state tort claims based on the dangerousness of all the cigarettes manufactured by the tobacco companies." Graham v. R.J. Reynolds Tobacco Company, 857 F.3d 1169, 1186 (11th Cir. 2017) cert. denied, 138 S. Ct. 646 (2018). In its decision the Eleventh Circuit noted that a state "may employ its police power to regulate cigarette sales and to impose tort liability on cigarette manufacturers" unless there is a "clear and manifest purpose of Congress" to supersede such "historic police power." Graham, 857 F.3d at 1191. It also examined laws related to tobacco regulation and determined that there was no indication that "Congress created a regulatory scheme that does not tolerate tort

liability based on the dangerousness of all cigarettes manufactured by the tobacco companies but tolerates tort actions based on theories with a more limited scope. Id. at 1188.

I find the reasoning in Graham persuasive. When considering preemptions, Courts begin "with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Altria Grp., Inc. v. Good, 555 U.S. 70, 77, 129 S. Ct. 538, 172 L. Ed. 2d 398 (2008). Here, the Defendant asks me to find that state law is impliedly preempted because it conflicts with Congress's clear policy in favor of the sale of cigarettes. But in 2004, Congress repealed the provision of the Agricultural Adjustment Act of 1938 that had articulated federal policy in support of the marketing of tobacco. See AMERICAN JOBS CREATION ACT OF 2004, PL 108–357, October 22, 2004, 118 Stat 1418, Title VI Fair and Equitable Tobacco Reform, § 611(a). As discussed in detail in Graham, the statement of purpose in the Labeling Act, 15 U.S.C. § 1331, does not reflect a federal objective to preserve cigarette sales. Graham, 857 F.3d at 1187–88. Additionally, the enforcement of state products liability laws does not create an obstacle to the accomplishment and execution of the purposes and objectives of Congress. Graham, 857 F.3d at 1187-88.

Additionally, even if the logic in Brown & Williamson applied, the Plaintiff's design defect claim would not result in a functional ban on cigarettes. Defendant argues that the Plaintiff's claim based on flue-cured tobacco, nicotine manipulation, and the addition of flavors apply to all cigarettes, but the Plaintiff is challenging specific design choices regarding flavor additions and nicotine levels. See McCracken v. R.J. Reynolds Tobacco Co., No. CV 17-4495, 2018 WL 2304041, at *5–6 (E.D. Pa. May 21, 2018); Bougopoulos v. Altria Grp., Inc., 954 F. Supp. 2d 54, 61 (D.N.H. 2013). Additionally, for her design defect claim to succeed, Plaintiff must also establish causation. Therefore, "[s]tate common law only affords a remedy to individuals who can establish that tobacco products rather than their own negligence or disregard of the inherent risks of tobacco caused them to suffer injuries." Richardson v. R.J. Reynolds Tobacco Co., 578 F. Supp. 2d 1073, 1078 (E.D. Wis. 2008).

Therefore, I conclude that federal law does not impliedly preempt plaintiff's claims. Defendant's arguments are insufficient to overcome the presumption against preemption and the principle that courts should read a federal statute as preempting state law only if Congress clearly indicates an intention to do so.

*Failure to State a Design Defect Claim Under Missouri Law*

Plaintiff states a claim for strict products liability under Missouri Law. Defendant argues that Plaintiff fails to state a claim for a design defect under both

the strict products liability and negligent design theories because she did not plead a specific design flaw or causation and because she failed to meet the basic pleading standards under Fed. R. Civ. P. 8. But as discussed earlier, Plaintiff specifically alleged design defects based on nicotine manipulation and the use of additive flavors to make the cigarettes more addictive and easier to smoke.

Under Missouri law, "[a] manufacturer is liable under a strict liability product defect claim "if the product was in an unreasonably dangerous defective condition when put to a reasonably anticipated use, and the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold." Smith v. Brown & Williamson Tobacco Corp., 275 S.W.3d 748, 791 (Mo. Ct. App. 2008) (quoting Richcreek v. Gen. Motors Corp., 908 S.W.2d 772, 775 (Mo. Ct. App. 1995); § 537.760. To prove a claim of strict products liability for defective design, a plaintiff must prove that "(1) the defendant sold a product in the course of its business; (2) the product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) plaintiff was damaged as a direct result of the defective condition that existed when the product was sold." Engel v. Corrigan Co.-Mech. Contractors, Inc., a Div. of Corrigan Bros., Inc., 148 S.W.3d 28, 30 (Mo. Ct. App. 2004) (citation omitted). "The core concern in strict tort liability law is safety. Therefore, the primary inquiry in a design defect case is whether the

product—because of the way it is designed—creates an unreasonable risk of danger to the consumer or user when put to normal use." Nesselrode v. Exec. Beechcraft, Inc., 707 S.W.2d 371, 375 (Mo. 1986) (internal citations removed). And in Missouri, "the concept of unreasonable danger, which is determinative of whether a product is defective in a design case, is presented to the jury as an ultimate issue without further definition." Id.

Here Plaintiff alleged that Defendant manipulated the amount of nicotine and used added flavors to make the cigarettes more addictive and easier to inhale. This is sufficient at this stage to state a claim for design defect. Therefore, the Defendant's motion as to Counts I and II will be denied.

COUNTS III AND IV (FRAUD)

In Count III, Plaintiff alleges that Defendant fraudulently concealed information that Defendant had a duty to disclose, and in Count IV, Plaintiff alleges that Defendant conspired with other cigarette manufacturers and the Tobacco Institute and Counsel for Tobacco Research to conceal material information from consumers. Defendant argues that Plaintiff's fraud claims are repackaged failure to warn claims and therefore are preempted by the Federal Cigarette Labeling and Advertising Act. Defendant also argues that it did not have a duty to disclose, and that Plaintiff's fraud claims are time-barred and fail to meet the heightened pleading standard under Fed. R. Civ. P. 9(b). Plaintiff argues that

her claims are not based on a "duty 'based on smoking and health,'" but on a duty not to deceive or commit fraud and therefore are not preempted. She also argues that her claim satisfies Fed. R. Civ. P. 9(b).

*Preemption*

Plaintiff's claims for fraudulent concealment and fraud concealment conspiracy are partially preempted. The Federal Cigarette Labeling and Advertising Act preempts state law claims "based on smoking and health … with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." Pub.L. 91–222, 84 Stat. 87, as amended, 15 U.S.C. § 1331-1340. Based on this statute, in Cipollone v. Liggett Group, Inc., the Supreme Court held that fraudulent concealment claims are preempted by the Federal Cigarette Labelling and Advertising Act, but only to the extent that they do not rely on a duty to disclose facts through channels other than advertising or promotion. Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 527–29, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992). Accordingly, the Plaintiff's claim regarding fraudulent concealment is partially preempted. It is preempted to the extent it alleges the Defendant has a duty to disclose information regarding the health and safety of cigarettes via advertising or promotion.

*Statute of Limitations*

Defendant next argues that Plaintiff's fraud claims are barred by the statute of limitations. "Missouri Revised Statute § 516.120(5) sets a five-year statute of limitations on claims based on fraud. Subsection (5) further provides that a cause of action based on fraud shall be "deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud." Wallace v. R.J. Reynolds Tobacco Co., No. 09-01011-CV-W-REL, 2011 WL 13290652, at *1 (W.D. Mo. Sept. 27, 2011); Mo. Rev. Stat. § 516.120(5). "Missouri courts have consistently interpreted this section to limit the statute of limitations for fraud to a fifteen year maximum." Id. (collecting cases). Defendant argues that the fraud claims are time-barred because they do not allege any fraudulent conduct taking place after September 13, 2005, 15 years prior to the filing date. Plaintiff counters by arguing that the alleged the fraud is ongoing.

Plaintiff's fraudulent concealment claim is time-barred because she does not allege any fraudulent acts occurring after September 13, 2005. Plaintiff details the history of the tobacco industry's position regarding the health of the cigarettes, but she does not allege any specific concealment or fraudulent statements that occurred from 2005-2020. See Wallace v. R.J. Reynolds Tobacco Co., No. 09-01011-CV-W-REL, 2011 WL 13290652, at *1 (W.D. Mo. Sept. 27, 2011). But her concealment fraud conspiracy claim is not time barred. The Eighth Circuit and

13

Missouri courts have held that conspiracy claims are not subject to the ten-year discovery period like fraud claims. Rather they are governed by Mo. Rev. Stat. §516.120.  Carr v. Aubuchon, 969 F.2d 714, 716 (8th Cir. 1992); May v. AC&S, Inc., 812 F. Supp. 934, 943 (E.D. Mo. 1993); Steinhilber v. Thompson, No. 90-0377-CV-W-9, 1991 WL 219393 at *4 (W.D. Mo. 1991);  Kansas City v. W.R. Grace & Co., 778 S.W.2d 264, 273 (Mo. App. 1989). The limitations in conspiracy cases begin to run upon the "occurrence of the last overt act charged resulting in damage to the plaintiff." Kansas City v. W.R. Grace & Co., 778 S.W.2d 264, 273 (Mo. App. 1989). A key element then of the limitations period is damages. Rippe v. Sutter, 292 S.W.2d. 86, 90-91 (Mo. 1956).  Thus,  when the act giving rise to the cause of action does not cause damages immediately, the period of limitations will date from when the resulting damage is sustained and capable of ascertainment. See Kansas City v. W.R. Grace & Co., 778 S.W.2d 264, 273 (Mo. App. 1989). Since Plaintiff was not diagnosed with cancer until 2019, the limitations period has not run. Therefore, I will also examine Defendant's argument regarding Fed. R. Civ. P. 9(b) to determine if the fraud claim is substantively flawed, requiring dismissal of both the underlying fraud claim and the conspiracy claim. See Wallace v. R.J. Reynolds Tobacco Co., 2011 WL 13290652 (W.D. Mo. Sep. 27, 2011).

*Federal Rule of Civil Procedure 9(b)*

Additionally, Plaintiff fails to meet the pleading standards required by Fed. R. Civ. P. 9(b). In order to prevail on her fraudulent concealment claims, Plaintiff must establish silence or concealment of facts that amounted to actual fraud and "a legal duty to disclose on the part of the fraud-feasor arising from a relation of trust, from confidence, inequality of condition, or superior knowledge which is not within the fair and reasonable reach of the other party." Mash v. Brown & Williamson Tobacco Corp., No. 4:03CV0485 TCM, 2004 WL 3316246, at *11 (E.D. Mo. Aug. 26, 2004) (citing VanBooven v. Smull, 938 S.W.2d 324, 328 (Mo. Ct. App. 1997)). *"*A plaintiff seeking to recover for fraudulent concealment must show all of the following: (1) the fact was not within the fair and reasonable reach of the plaintiff; (2) the plaintiff was unable to discover the concealed information; and (3) plaintiff exercised reasonable diligence." Littlefield v. Edmonds, 172 S.W.3d 903, 907 (Mo. Ct. App. 2005) (citing Keefhaver v. Kimbrell, 58 S.W.3d 54, 60 (Mo. Ct. App. 2001)). Additionally, Plaintiff's complaint must meet the requirements of Fed. R. Civ. P. 9(b), which mandates a heightened pleading standard for fraud-based claims. See Drobnak v. Andersen Corp., 561 F.3d 778, 783–84 (8th Cir. 2009). To satisfy Fed. R. Civ. P. 9(b)'s requirements the complaint "must allege 'such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentations

15

and what was obtained or given up thereby.'" Id. "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Id. "To determine whether a party has satisfied Rule 9(b), courts look to 'the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." Corval Constructors, Inc. v. Tesoro Ref. & Mktg. Co., LLC, No. 19CV01277ECTBRT, 2019 WL 5260483, at *7 (D. Minn. Oct. 17, 2019) (quoting Payne v. United States, 247 F.2d 481, 486 (8th Cir. 1957) (8th Cir. 1957).

To the extent the Plaintiff's fraud claims are not preempted, they fail to satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b). First, although Plaintiff provides a few specific statements made by tobacco companies and the Tobacco Institute, most of the allegations made by Plaintiff do not allege specific fraudulent statements. Plaintiff's complaint also fails to adequately allege that the concealed facts were not within her fair and reasonable reach, that she was unable to discover the concealed information, or that she exercised reasonable diligence. Although Plaintiff states generally that she has heard, seen, and read about the public pronouncements made by cigarette companies and the Tobacco Institute, she fails to indicate when, where or how she heard or saw the statements that allegedly concealed material information. See In re Gen. Motors Corp. Anti-Lock

16

Brake Prod. Liab. Litig., 966 F. Supp. 1525 (E.D. Mo. 1997), aff'd sub nom. Briehl v. Gen. Motors Corp., 172 F.3d 623 (8th Cir. 1999). She also failed to identify any specific facts Defendant allegedly concealed. See Wallace v. R.J. Reynolds Tobacco Co., No. 09-01011-CV-W-REL, 2010 WL 11579047, at *3 (W.D. Mo. Aug. 12, 2010).  Plaintiff also failed to indicate that she exercised reasonable diligence or that the information concealed was not "within the fair and reasonable reach of the Plaintiff." Littlefield, 172 S.W.3d at 907; see also In re EpiPen Direct Purchaser Litig., No. 20-CV-0827 (ECT/TNL), 2021 WL 147166, at *7 (D. Minn. Jan. 15, 2021); Whittington v. Nordam Grp. Inc., 429 F.3d 986, 996 (10th Cir. 2005).

Since Plaintiff failed to plead her fraud claims with the particularity required under Fed. R. Civ. P. 9(b), both the fraudulent concealment claim and the concealment fraud conspiracy claims will be dismissed.

<u>PUNITIVE DAMAGES</u>

Plaintiff concedes that her claim for punitive damages is premature under Mo. Rev. Stat. § 510.261. Thus, the claim for punitive damages will be stricken.

## CONCLUSION

For the reasons discussed above, I will deny the Defendant's motion to dismiss as to the Plaintiff's strict products liability claim and negligent design

claim (Counts I and II) but will grant the motion as to Plaintiff's fraudulent concealment claim and concealment fraud conspiracy claim (Counts III & IV).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss, ECF No. [10] is **DENIED** as to Counts I and II and **GRANTED** as to Counts III and IV.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Relief, ECF No. [33] is **GRANTED**. A separate order setting a Rule 16 conference will be issued.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 6th day of August 2021.